UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

| | |
|---|---|
| DELAINE LAFKAS<br>3268 Nash Ave.<br>Cincinnati, OH 45226<br><br>    Plaintiff,<br><br>    v.<br><br>FIDELITY BROKERAGE SERVICES, LLC<br>c/o CT Corporation<br>1300 E. Ninth Street<br>Cleveland, OH 44114<br><br>and<br><br>FMR CORP.<br>82 Devonshire St.<br>Boston, MA 02109<br><br>    Defendants. | Case No. 2:06cv122<br><br>J. Bertelsman<br><br><br><br><br><br>**AMENDED COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED** |

## PARTIES

1.  Plaintiff Delaine Lafkas is a citizen and resident of the State of Ohio and was a dedicated and loyal employee of Defendant Fidelity Brokerage Services and Defendant FMR Corp.

2.  Defendant FMR Corp. is a business which is incorporated under the laws of Massachusetts, headquartered in Massachusetts and conducts business within the State of Kentucky.

3.  Defendant Fidelity Brokerage Services, LLC is a wholly owned subsidiary of Defendant FMR Corp. It is incorporated under the laws of Massachusetts, headquartered in Massachusetts, and it conducts business within the State of Kentucky.

1

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the Defendants because Defendants conduct business in this district and division.

5. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States.

6. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

7. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because said claims arise out of the same set of operative facts, as to make them part of the same case or controversy.

8. Venue is proper in the Eastern District of Kentucky at Covington, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in that District.

9. Plaintiff has received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

## FACTS

10. Plaintiff was hired by Defendants in October, 2000 as a Capture Services Representative in the New Accounts Prep Department for Fidelity Retail Applications.

11. In August 2002, Plaintiff was promoted to Senior Capture Services Associate, and in January 2004, Plaintiff was promoted again to Senior Account Services with Defendants' National Financial Services New Account Group. After her January promotion, Plaintiff received a pay increase to salary grade 12.

12. After Plaintiff was promoted to Senior Account Services, Defendants requested that Plaintiff get both her Series 7 and Series 63 licenses, and Plaintiff immediately began studying for them.

13. Throughout her employment at Fidelity, Plaintiff received favorable performance reviews. Notably, in July 2004, her manager, Bernadette Martin, told Plaintiff that she was "the best employee [she] ever hired." Additionally, Ms. Martin told Plaintiff that she ranked first out of twelve employees for quality.

14. After receiving that positive review, Plaintiff applied for a promotion to a salary grade 13 position. After Defendants gave the position to another candidate, Ms. Martin told Plaintiff to "hang in there," and that she would be promoted soon.

15. In August 2004, Plaintiff's work group assumed responsibility for the Prime Brokerage Operations Program. Even though Plaintiff was the only salary grade 12 employee on the team, she was placed on the phone team to handle Client Service Manager problems. She was told that her work on the phone team was "really good" and that serving on the phone team and the Prime Brokerage Operations Program would qualify her for a promotion to a salary grade 13 position.

16. In December 2004, Plaintiff took and passed her Series 7 licensing test, and immediately began studying for her Series 63 test. She passed her Series 63 test in early March 2005.

17. In early 2005, Plaintiff met with Diane Russell about the possibility of a promotion. Ms. Russell told Plaintiff that if she continued to work on the phone team and kept a positive attitude, she would be promoted.

18.     In February 2005, Plaintiff met with Ms. Martin about the possibility of a promotion. Ms. Martin stated that she was pleased that Plaintiff had earned her Series 7 license, and promised that Plaintiff would be a viable candidate for the next available grade 13 position.

19.     On March 16, 2005, Plaintiff was abruptly terminated. When Defendants terminated Plaintiff's employment, she was informed that Defendants had been monitoring her behavior since January 2005, and that she was being terminated for discrepancies between her timekeeping and her computer log-in time.

20.     At this meeting, Plaintiff requested an opportunity to resolve these discrepancies, but she was denied that opportunity and fired on the spot. This action directly violated Defendants' Employee Handbook which provides for progressive discipline.

21.     Defendants' employees had not been required before to ensure that their timekeeping and computer log-in times coincided. In fact, it was a well-known practice that when employees entered the building in the morning, they would "piggyback" through the badge swipe system. Because of this common practice, it is probable that none of the employees' timekeeping coincides with their badge swipes.

22.     There is at least one male employee who regularly arrives at work late, but this male employee has never been audited by the Defendants, nor has he been reprimanded for his timekeeping discrepancies.

23.     Within Plaintiff's working group, the majority of the male employees are paid at salary grade 13. The majority of the female employees are paid at salary grade 12 for the same work.

24.     Plaintiff's supervisor, John Buckner, held regular basketballs games with male employees, and invited male employees to attend his poker games. Mr. Buckner did not invite any female employees to participate in either the basketball games or the poker games.

## COUNT I

**(Gender Discrimination - Title VII of the Civil Rights Act of 1964, as amended)**

25. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

26. Plaintiff was qualified for her position at all times.

27. Defendants terminated Plaintiff's employment because of her gender, in violation of Title VII of the Civil Rights Act of 1964.

28. Defendants' actions were willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

29. As a direct and proximate cause of Defendants' discriminatory conduct, Plaintiff has suffered injuries and damages for which she is entitled to recovery.

## COUNT II

**(Gender Discrimination -K.R.S. Chapter 344)**

30. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

31. Plaintiff was qualified for her position at all times.

32. Defendants terminated Plaintiff's employment because of her gender, in violation of KR.C. §344.040

33. Defendants' actions were willful, wanton, malicious and/or in reckless disregard of Plaintiff's rights.

34. As a direct and proximate cause of Defendants' discriminatory conduct, Plaintiff has suffered injuries and damages for which she is entitled to recovery.

## COUNT III

**(Promissory Estoppel)**

35. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

36. Defendants promised Plaintiff that she would be considered for a salary grade 13 position.

37. Plaintiff justifiably relied on that promise by completing both her Series 7 and Series 63 licensing requirements.

38. Defendants knew or reasonably should have known that Plaintiff relied on the promise.

39. Defendants breached this promise by not considering Plaintiff for available salary grade 13 positions, and abruptly terminating her employment.

40. Plaintiff has been injured and is entitled to judgment.

## COUNT IV

### (Breach of Implied Contract)

41. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

42. Plaintiff had an implied contract for employment and other benefits with Defendants.

43. Defendants breached this contract when it failed to follow handbook policies when it terminated Plaintiff's employment.

44. As a direct and consequential result of Defendants' breach, Plaintiff has suffered injury and damages for which she is entitled to recovery.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be awarded all lost pay and benefits;

(c) That Plaintiff be awarded compensatory damages;

(d) That Plaintiff be awarded punitive damages;

(e)     That Plaintiff be awarded pre-judgment interest;

(f)     That Plaintiff be awarded reasonable attorneys' fees and costs; and

(g)     That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

/s/ Kelly Mulloy Myers
Kelly Mulloy Myers (86727)
Trial Attorney for Plaintiff
FREKING & BETZ
215 E. Ninth Street, Fifth Floor
Cincinnati, OH 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*kmyers@frekingandbetz.com*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Kelly Mulloy Myers

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail, e-mail and/or facsimile to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's System.

I also served this Amended Complaint on Gregory Parker Rogers, Taft, Stettinius & Hollister LLP, 425 Walnut St. Suite 1800, Cincinnati, OH 45202 by e-mail at rogers@taftlaw.com

/s/ Kelly Mulloy Myers